```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


CHARLES SHAW, JR.,                      )
                                        )
                Plaintiff,              )
                                        )
        v.                              )     No. 4:07 CV 1653 DDN
                                        )
SANTIAGO HALLAZGO and                   )
CORRECTIONAL MEDICAL SERVICES,          )
                                        )
                Defendants.             )
```

**MEMORANDUM**

This matter is before the court on the unopposed motion of defendant Correctional Medical Services (CMS) for summary judgment (Doc. 20) and the motion of plaintiff to substitute a party. (Docs. 16, 17). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 24.) The court grants the motion of CMS and denies the motion of plaintiff for the reasons set forth below.

## I.  Pleadings

Plaintiff Charles Shaw, Jr. commenced this lawsuit pro se pursuant to 42 U.S.C. § 1983 while a pretrial detainee at the Medium Security Institution (MSI) in St. Louis, Missouri. Plaintiff named as defendants Correctional Medical Services (CMS), a private corporate entity providing medical care to inmates at MSI through licensed health care professionals (Doc. 21), and Dr. Santiago Hallazgo,[1] a physician employed by CMS who is now deceased. In his amended complaint, plaintiff alleges that Hallazgo performed surgery for a wart on his upper thigh which never healed properly; that he complained to the medical staff but no one has attempted to rectify the problem or refer him to an infectious disease specialist; that MSI failed to take him to an appointment with a specialist; and that

---

[1]The court notes various spellings throughout the record for defendant Hallazgo's last name. The undersigned will adopt the spelling used by CMS.

both Hallazgo and CMS "constantly" deny him medical treatment. (Doc. 6 at 6.)

CMS now moves for summary judgment. In support of its motion, CMS submitted, inter alia, plaintiff's medical records, and the affidavits of Ralf J. Salke, CMS Vice President of Operations, and Elizabeth Conley, M.D., CMS Regional Medical Director. Plaintiff did not file a response to the motion.[2]

CMS also filed a suggestion of death pursuant to Federal Rule of Civil Procedure 25(a), noting Hallazgo died on February 9, 2008. (Doc. 15.) In its notice, CMS did not indicate the proper party defendant to be substituted. Plaintiff has moved for substitution, suggesting that the court allow the action to proceed against Dr. Hallazgo's representative. (Doc. 16 at 2.)

## II. Discussion

A. CMS's Motion for Summary Judgment

Summary judgment must be granted, when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Union Elec. Co., 378 F.3d at 785. A fact is "material," if it could affect the ultimate disposition of the case, and a factual dispute is "genuine," if there is substantial evidence to support a reasonable jury verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United National Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in his

---

[2]Following the filing of the pending motions, plaintiff filed a notice to the clerk of court, dated April 17, 2008, that he would be leaving MSI on April 18 and that further "legal mail" should be mailed to his daughter's house at a specified address. (Doc. 22.)

pleadings but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir.), cert. denied, 543 U.S. 956 (2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

As an initial matter, it is well established that pretrial detainees such as plaintiff are accorded the due process protections of the Fourteenth Amendment, protections "at least as great" as those the Eighth Amendment affords a convicted prisoner. Boswell v. Sherburne County, 849 F.2d 1117, 1120-21 (8th Cir. 1988).

Plaintiff failed to submit a statement of material facts as to which he contends a genuine issue exists, as required by Rule 4.01(E). As a result, for purposes of this motion plaintiff is deemed to have admitted all facts which were not specifically controverted. See Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999); see also Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005)(where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E. D. Mo. Local Rule 4.01(E)). Moreover, although plaintiff did not respond to CMS's motion, "the absence of a response to a dispositive motion does not relieve the Court of its duty to consider the motion on the merits . . . ." Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1006 (8th Cir. 2000).

The undisputed proffer of evidence, viewed in the light most favorable to plaintiff, reveals the following.

Defendant is a private entity providing medical care to inmates within the St. Louis Justice Center and MSI. CMS abides by policies and procedures established by the City of St. Louis. The policies and procedures of the City of St. Louis control all areas of medical services to be given inmates. CMS does not have any final policy making authority. (Doc. 21, Ex. A.)

CMS uses the services of independently contracted physicians to provide medical care for inmates housed at MSI and elsewhere. While CMS's Regional Medical Director oversees the practices of the physicians and is able to recommend treatment and medical care plans, the independently contracted physicians are able to do that which they deem appropriate in

their independent discretionary medical judgment under the circumstances. (Id.)

Plaintiff arrived at MSI on November 21, 2005. (Doc. 21, Ex. C.) On October 2, 2006, Hallazgo saw plaintiff for an unrelated long standing medical disease, at which time plaintiff complained he had a painful lesion on his right groin area. Hallazgo diagnosed a verruca vulagaris, a common wart that may occur anywhere on the body, and scheduled him for elective surgical excision of the lesion. (Doc. 21, Ex. C-2.)

On November 2, 2006, Hallazgo saw plaintiff, at which time plaintiff stated that the lesion was bleeding occasionally, probably because it was rubbing against his underwear. After the area was cleaned and anesthetized, Hallazgo excised the lesion, sent the tissue to a lab for evaluation, and prescribed Tylenol # 3 (with codeine) as needed for pain. plaintiff was seen later the same day by a non-defendant nurse for complaints of bleeding at the surgical site, at which time the area was cleansed and a pressure dressing applied. (Id.)

The following morning, November 3, 2006, Hallazgo saw plaintiff for post-operation follow up, at which time the area was cleaned, the dressing changed, and a follow up appointment scheduled. (Doc. 21, Ex. C-5.)

On November 9, 2006, Hallazgo saw plaintiff for follow up. Hallazgo noted the surgical area was moist with minimal drainage from the incision site and the sutures were intact. The laboratory results showed a diagnosis of Bowens disease, an in-situ squamous cell carcinoma, and Plaintiff was informed of the diagnosis. The surgical area was cleaned, the dressing changed, and Tylenol # 3 continued as needed for pain. (Doc. 21, Ex. C-5.)

On November 13, 2006, Hallazgo saw plaintiff for follow up, at which time plaintiff noted that the surgical incision had dehiscence (opening) but because of the location of the wound, the edges were not gaping. The sutures were removed and continued daily wound care ordered. A culture for the wound drainage revealed a localized skin infection. A two week course of Bactrim DS, an oral antibiotic, was prescribed. (Doc. 21, Ex. C-6.)

On November 15, 2006, a non-defendant nurse saw plaintiff, noting the surgical site was without drainage, redness, or swelling. The area

was cleaned, a dressing applied, and continued daily wound care ordered. (Doc. 21, Ex. C-7.)

On January 10, 2007, Hallazgo saw plaintiff for his unrelated medical condition. Plaintiff voiced no complaints concerning his surgical site. (Doc. 21, Ex. C-7.)

On March 15, 2007, Hallazgo saw plaintiff for his unrelated medical condition. Plaintiff reported doing well and voiced no complaints about his surgical site and wound. (Doc. 21, Ex. C-9.)

On May 29, 2007, plaintiff requested to be seen by medical staff for his unrelated condition, complaining, inter alia, that he became breathless when walking. (Doc. 21, Ex. C-10.) In response, on June 4, 2007, a non defendant nurse saw plaintiff, who stated his surgical site was still bleeding. Plaintiff was referred to a medical doctor (Doc. 21, Ex. C-10.)

On June 5, 2007, Hallazgo saw plaintiff, who indicated his surgical site was painful. Hallazgo noted a small lesion at the right of the surgical site which was probably a suture granuloma, a long standing inflammatory change of the skin tissue at a suture site. Hallazgo noted no signs of infection or bleeding. (Id.)

On July 2, 2007, plaintiff requested to be seen by medical staff. On July 9, 2007, a non-defendant nurse saw plaintiff, noting plaintiff's right inguinal area had an open area approximately 1 cm by 1 cm in size that was pink and had no drainage or odor. Hallazgo ordered the nurse to treat plaintiff with antibiotic ointment for thirty days and a band aid. (Doc. 21, Ex. C-11.)

On July 30, 2007, Hallazgo saw plaintiff for complaints of bleeding at the surgical site. Hallazgo noted pinkish granulation at the surgical site and no bleeding. Hallazgo ordered cleaning the wound every other day with Betadine and applying antibiotic cream. (Doc. 21, Ex. C-12.)

On September 21, 2007, a nondefendant physician saw plaintiff for his unrelated medical condition, at which time he had no complaints about his surgical site. (Doc. 21, Ex. C-13.)

On October 14, 2007, a nondefendant nurse saw plaintiff for his unrelated medical condition, and again made no complaints about his surgical site. (Doc. 21, Ex. C-14.)

On March 4, 2008, plaintiff requested medical services for "bumps around his private area," but on March 7, 2008 refused his appointment. (Doc. 21, Ex. C-15.)

On March 12, 2008, a nondefendant physician saw plaintiff for his unrelated medical condition, noting his history with respect to his lesion removal and that he had complaints concerning the surgical site. (Doc. 21, Ex. C-15.) Plaintiff was released from MSI on April 18, 2008. (Doc. 22.)

In support of its motion for summary judgment, CMS argues plaintiff fails to identify a policy--which CMS has final policy-making authority over--which violated his constitutional rights. CMS argues that instead of alleging specific policies that have caused him to endure constitutional injuries, plaintiff alleges a specific isolated medical problem that he claims was not properly attended to by CMS. The undersigned agrees.

In his amended complaint plaintiff alleges that Hallazgo performed surgery for a wart on his upper thigh which never healed properly; that he complained to the medical staff but no one has attempted to rectify the problem or refer him to an infectious disease specialist; that MSI failed to take him to an appointment with a specialist; and that Hallazgo and CMS "constantly" deny him medical treatment. (Doc. 6 at 6.)

Defendant CMS is a private corporation. CMS, however, cannot be held liable under a theory of respondeat superior as "respondeat superior is not a basis for liability under 42 U.S.C. § 1983." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (internal citations omitted). A corporation can "only be held liable for its own unconstitutional policies," customs or actions that injure a plaintiff if that corporation is "acting under color of state law." Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 694 (1978); Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007). Assuming that CMS was acting under color of state law, plaintiff's claims fail because plaintiff did not allege any such policy, custom, or action in his complaint. Moreover, plaintiff has not responded to CMS's motion and has produced no facts demonstrating the existence of any policy, custom or action on CMS's part that caused his purported injuries. CMS is therefore entitled to summary judgment.

CMS further argues plaintiff has failed to present any evidence CMS was deliberately indifferent to his serious medical needs. Deliberate indifference to a serious medical need is properly evaluated under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106 (1976). To establish deliberate indifference, the court must consider "both an objective and subjective component." Tiamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001). The objective component requires a plaintiff to demonstrate that he "suffered objectively serious medical needs," while the subjective component of the claim requires that a plaintiff demonstrate "that the prison officials actually knew of but disregarded those needs." Id. Knowledge of a medical need can be established circumstantially, and is established if the need "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Cambreros v. Branstead, 73 F.3d 174, 176 (8th Cir. 1995); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).

The Eighth Amendment does not limit physicians from exercis[ing] their independent medical judgment. Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007)(quoting Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)). Inmates do not a have constitutional right to any particular type of treatment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). A mere disagreement with the course of treatment or a physician's medical diagnosis fails to state a claim under the Eighth Amendment. Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir. 1988).

Plaintiff has produced no evidence to support his claim that the treatment provided for his various medical complaints was constitutionally inadequate. Meuir, 487 F.3d at 1119. CMS has provided medical records which indicate that treatment was provided for plaintiff's condition. The undisputed facts demonstrate that plaintiff's condition was diagnosed by Hallazgo; that Hallazgo and other non defendant health care providers treated plaintiff for his condition; and that plaintiff was seen regularly by Hallazgo and the rest of the medical staff for his complaints. The record fails to demonstrate any genuine dispute regarding these facts. CMS is therefore entitled to summary judgment on this claim. Cf. Wilburn v. Correctional Medical Servs., No. 4:06 CV 1828 ERW, 2008 WL 2020284 at

5-6 (E.D. Mo. May 8, 2008).

B. Plaintiff's Motion to Substitute

Plaintiff's amended complaint is silent as to whether defendant Hallazgo is being sued in his official or individual capacity. If a complaint is silent about the capacity in which plaintiff is suing defendant, a district court must interpret the complaint as including only official capacity claims. Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989); see also, Baker v. Chisholm, 501 F.3d 920, 923 (8th Cir. 2007)(reaffirming Egerdahl).

In Kentucky v. Graham, 473 U.S. 159 (1985), the Supreme Court explained the difference between individual capacity and official capacity claims:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Brandon, *supra*, 469 U.S., at 471-472, 105 S.Ct., at 878. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. 165-166. Naming Hallazgo in his official capacity is the equivalent of naming the entity that employs him, i.e., CMS. See Grace v. Chastain, No. 4:08-CV-598 SNL, 2008 WL 2402231 at *2 (E.D. Mo. June 10, 2008), citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, although plaintiff named Hallazgo as a defendant, his failure to allege the capacity in which he was being sued results in his lawsuit proceeding against CMS, the entity that employed him. The fact

that CMS is a private entity providing services pursuant to a contractual arrangement does not change the result. See West v. Atkins, 487 U.S. 42, 55-56 (1988).

To the extent plaintiff is seeking to substitute[3] a personal representative of Hallazgo, thus suing him in his personal capacity, the undersigned denies the motion to substitute parties. Even if plaintiff were allowed to amend his complaint to name Hallazgo in his individual capacity, plaintiff has failed to demonstrate a deliberate indifference to his medical needs. Therefore, a substitution of a personal representative of Hallazgo as a defendant in this lawsuit would be futile. Accordingly, the court denies plaintiff's motion to substitute.

### III. Conclusion

For the reasons set forth above, the undersigned grants the motion of defendant CMS for summary judgment and denies the motion of plaintiff to substitute a party. (Docs. 16, 20.) All remaining motions are denied as moot. (Docs. 17, 20.)

A Judgment Order in accordance with this Memorandum is filed herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 21, 2008.

---

[3]Fed. R. Civ. P. 25(a)(1) provides in part, "If a party dies and the claim is not thereby extinguished, the court *may* order substitution of the proper parties." Fed. R. Civ. P. 25(a)(1)(emphasis added). The permissive nature this language indicates that the court may deny substitution in the exercise of its sound discretion. Cf. 6 Moore's Federal Practice § 25.12[4] at 25-19 (3rd ed. 2008).